**PUBLISH**

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**January 29, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

ESTATE OF VERA CUMMINGS, by and
through personal representative Elicia
Montoya,

     Plaintiff - Appellee,

v.

COMMUNITY HEALTH SYSTEMS,
INC.,

     Defendant - Appellant,

and

UNITED STATES OF AMERICA; LAS
CRUCES MEDICAL CENTER, d/b/a
MOUNTAIN VIEW REGIONAL
MEDICAL CENTER,

     Defendants.

No. 17-2026

_____

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. 1:12-CV-00081-WJ-GBW)**
_____

Michael J. Dekleva (William C. Madison and M. Eliza Stewart, with him on the briefs),
Madison, Mroz, Steinman & Dekleva, P.A., Albuquerque, New Mexico, for Defendant-
Appellant.

Lisa K. Curtis, Curtis & Lucero, Albuquerque, New Mexico (Amalia S. Lucero, Curtis &
Lucero, Albuquerque, New Mexico, and Steven L. Tucker, Tucker Law Firm, P.C., Santa
Fe, New Mexico, with her on the brief ) for Plaintiff-Appellee.

_____

Before **HARTZ**, **HOLMES**, and **BACHARACH**, Circuit Judges.
_____

**HARTZ**, Circuit Judge.
_____

This is the second appeal in this litigation to come before this court. The first appeal involved claims by the estate of Vera Cummings (the Estate) against Community Health Systems, Inc. (CHSI) under state law, against the United States under the Federal Tort Claims Act (FTCA), and against Mountain View Regional Medical Center (Mountain View) under state law. We disposed of the appeal by (1) entering an order approving the stipulated dismissal with prejudice of the appeal of the district court's dismissal for lack of personal jurisdiction of the claims against CHSI, (2) affirming the district court's dismissal of the claims under the FTCA for lack of subject-matter jurisdiction, and (3) directing the district court to vacate its judgment in favor of Mountain View and to remand the claims against Mountain View—but not the claims against CHSI— to state court for lack of subject-matter jurisdiction.

On remand to the district court, however, it went beyond our mandate by vacating its dismissal of the claims against CHSI and remanding those claims to state court. CHSI appealed. We reverse the order vacating the dismissal of the claims against CHSI and remanding those claims to state court. We also reject the Estate's motion to dismiss this appeal for lack of jurisdiction.

2

## I.  BACKGROUND

### A.  Initial Proceedings

On January 28, 2008, Mountain View admitted Vera Cummings, who complained of dizziness and confusion.  *See Estate of Cummings v. United States*, 651 F. App'x 822, 824 (10th Cir. 2016) (*Estate of Cummings I*).  After doctors at Mountain View treated her for about 10 days, she was released to another health-care facility and died four days later.  *See id.*  In January 2011 the Estate filed suit in New Mexico state court against three physicians, Mountain View, and CHSI.  The Estate alleged that negligent care by Mountain View and the physicians caused Cummings's death, and that CHSI "controlled and operated" Mountain View and was "vicariously liable" for the negligence of the other defendants.  Aplt. App. at 37–38.

In January 2012 the United States certified that the physicians were acting in the scope of their employment with the United States Public Health Service (PHS) and removed the action to the United States District Court for the District of New Mexico, with the United States substituted for the physicians as a defendant.  *See* 42 U.S.C. § 233(c) (authorizing such removal and substitution).[1]  After removal and substitution,

---

[1]  The statute states in pertinent part:

> Upon a certification by the Attorney General that [a] defendant was acting in the scope of his employment [as a commissioned officer or employee of the PHS] at the time of the incident out of which the suit arose, any such civil action or proceeding commenced in a State court shall be removed . . . to the district court of the United States of the district and

the sole remedy for the conduct of the physicians is under the FTCA. *See id.* at § 233(a).

In September 2012 the district court dismissed the claims against CHSI for lack of personal jurisdiction. The court held that exercising jurisdiction over CHSI would violate its constitutional right to due process because "CHSI is a nonresident holding company with no minimum contacts with New Mexico . . . ." Aplt. App. at 58. In 2014 the district court granted Mountain View summary judgment because of the Estate's failure to disclose an expert report on an essential element of its claims against Mountain View. And in February 2015 the court entered final judgment, disposing of the only remaining claims—those against the government—for lack of subject-matter jurisdiction because the Estate had not exhausted administrative remedies as required by the FTCA.

## B. The First Appeal

The Estate appealed the district court's judgment in March 2015. Its docketing statement listed five issues for appeal, including whether the district court had erred by dismissing CHSI for lack of personal jurisdiction. The next month, this court scheduled a mediation conference, *see* 10th Cir. Loc. R. 33.1, which was a partial success. The parties filed a "Stipulation to Dismiss" stating that "[p]ursuant to discussions held under Tenth Circuit Rule 33.1 . . . and the agreement of the parties, [the Estate and CHSI] hereby stipulate that the above appeal be dismissed with prejudice as to [CHSI] only." Aplt. App. at 96. This court then entered an order stating that "[u]pon consideration of

---

division embracing the place wherein it is pending and the proceeding
deemed a tort action brought against the United States . . . .

42 U.S.C. § 233(c); *see also id.* § 233(a) (source of material concerning PHS).

4

the stipulation this appeal is dismissed with respect to [CHSI] only." *Id.* at 99.

On June 7, 2016, we entered an order and judgment disposing of the remaining issues on appeal (the First 2016 Order). The caption included the Estate as the plaintiff and the United States and Mountain View (but not CHSI) as the defendants. We affirmed the dismissal of the claims against the government for lack of subject-matter jurisdiction, agreeing that (1) the doctors had been federal actors, (2) the Estate had not exhausted administrative remedies before suing, and (3) exhaustion is a statutory jurisdictional requirement under the FTCA. *See* First 2016 Order at 12. As for the claims against Mountain View, the Estate had contended that "[s]hould this court affirm the district court's dismissal of the case for lack of subject matter jurisdiction, . . . it must extinguish all rulings in the case and remand the case against Mountain View to New Mexico state district court." Aplt.'s Opening Br. at 27, *Estate of Cummings I* (10th Cir. July 15, 2015). We agreed. Our opinion concluded with the following dispositional language:

> The dismissal of the federal claims is AFFIRMED. The district court's rulings *on the supplemental claims* are VACATED with instructions to the district court to remand to New Mexico state court.

First 2016 Order at 13 (emphasis added).

Two weeks later, Mountain View asked this court "to clarify and confirm that the claims against [CHSI] have not been remanded to New Mexico state court." Aplt. App. at 105. It asserted that because the Estate voluntarily dismissed with prejudice its appeal as to CHSI, "the Court lacked jurisdiction under 28 U.S.C. § 1291 to hear an appeal of the district court's order dismissing CHSI for lack of personal jurisdiction" and "could not have remanded the claims against CHSI to state court." *Id.* at 107. On June 24 this

5

court entered an order granting this request by changing the dispositional language to read:

> The dismissal of the federal claims is AFFIRMED. The district court's rulings *on the supplemental claims against Mountain View* are VACATED with instructions to the district court to remand to New Mexico state court.

*Estate of Cummings*, 651 F. App'x at 828 (emphasis added). Mandate issued on August 30, 2016.

### C.  District-Court Proceedings on Remand

Complying with the mandate, the district court entered an order on August 31, 2016, stating that "the Clerk of Court shall REMAND [the Estate's] claims against [Mountain View]" to New Mexico state court "as directed by the Tenth Circuit Court of Appeals." Aplt. App. at 70. But that did not end the district court's involvement with the case. More than four months later, on January 19, 2017, Mountain View asked the district court for a temporary restraining order and a preliminary injunction. It represented that the Estate was pursuing its claims against CHSI in state court and requested an injunction barring the Estate from "prosecuting [the remanded case] against [CHSI]" or "filing further suits or prosecuting further litigation against CHSI in the State of New Mexico." *Id.* at 71. Injunctive relief was allegedly needed "to prevent the Estate from relitigating the personal jurisdiction issue that [the district court had] already decided." *Id.*; *see* 28 U.S.C. § 2283 (permitting a federal court to enjoin state-court proceedings "where necessary in aid of its jurisdiction, or to protect or effectuate its judgments"); *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 150–51 (1988) (federal

6

district court could enjoin state court from considering state-law claim whose validity had already been adjudicated by the federal court); *Ute Indian Tribe of the Uintah & Ouray Reservation v. Utah*, 790 F.3d 1000, 1007–09 (10th Cir. 2015) (remanding to district court with instructions to enjoin state prosecution being pursued contrary to prior federal-court decision that certain lands are Indian country).

On January 25, 2017, the district court denied Mountain View's request, explaining that it lacked subject-matter jurisdiction to consider the merits of the motion. It then entered the order that is the subject of this appeal. It sua sponte decided to vacate its earlier dismissal of the claims against CHSI and remanded those claims to state court. It said that "[u]nder its inherent jurisdiction" it needed to "attend to a piece of this case" that had been "left behind and inadvertently overlooked." Aplt. App. at 135. Because "[i]t ha[d] been definitively decided that this Court lacks subject matter jurisdiction over this entire case, including *all* supplemental state law claims," the court stated that "in addition to vacating its ruling on the Mountain View claims, the Court should have also vacated its rulings on the CHSI claim[s] and remanded them" to state court. *Id.* at 134. The order declared that the court's "prior rulings on the supplemental claims asserted against CHSI . . . are hereby VACATED," and it directed the clerk to send the New Mexico state court a copy of the order. *Id.* at 136–37. It also entered a judgment stating that "the Clerk of Court shall REMAND [the Estate's] claims against Defendant Mountain View and CHSI." *Id.* at 138.

CHSI filed a notice of appeal, challenging both the vacation of the prior dismissal of the claims against it and the remand of those claims to state court. The Estate has

7

moved to dismiss the appeal on the ground that 28 U.S.C. § 1447(d) deprives this court of jurisdiction to review the remand order. We hold that we have jurisdiction and reverse.

## II. DISCUSSION

Although we should not opine on the merits of an appeal over which we lack jurisdiction, we think that addressing the merits first (knowing that we will later explain why we have jurisdiction) will facilitate our later discussion of the jurisdictional issue.

### A. The Merits of the District Court's Decision

The district court's decision to vacate its personal-jurisdiction dismissal of the claims against CHSI and to remand the claims to state court makes sense on its face. But the decision was based on two false assumptions—that the district court had not had jurisdiction to dismiss CHSI for lack of personal jurisdiction and that the district court had authority after our remand to reconsider the dismissal.

The first error was to assume that only a court with subject-matter jurisdiction can address personal jurisdiction. The district court's decision to reinstate and remand the CHSI claims rested on this assumption. *See* Aplt. App. at 134 (court's lack of subject-matter jurisdiction "means that . . . Court should have also vacated its rulings on the CHSI claim and remanded [the claim] to state court").

The assumption is contrary to precedent. The Supreme Court and this court have repeatedly held that a federal court need not address its jurisdiction when it can dismiss the case on another ground that does not require determining the merits. For example, in *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007), the Court said that "[a] district court . . . may dispose of an action by a *forum non conveniens*

8

dismissal, bypassing questions of subject-matter and personal jurisdiction, when considerations of convenience, fairness, and judicial economy so warrant." *Id.* at 432. And this court has followed *Sinochem* in other contexts. *See Citizen Ctr. v. Gessler*, 770 F.3d 900, 906 (10th Cir. 2014) (addressing mootness before standing, explaining that "[b]ecause there is no mandatory sequencing of nonmerits issues, we have leeway to choose among threshold grounds for denying audience to a case on the merits" (brackets and internal quotation marks omitted)); *Valenzuela v. Silversmith*, 699 F.3d 1199, 1205 (10th Cir. 2012) (addressing failure to exhaust rather than mootness)*; see also Gadlin v. Sybron Int'l Corp.*, 222 F.3d 797, 799 (10th Cir. 2000) (before *Sinochem,* stating that court can address personal jurisdiction before subject-matter jurisdiction).

Indeed, in *Ruhrgas A.G. v. Marathon Co.*, 526 U.S. 574 (1999), the Supreme Court approved a district court's decision to address personal jurisdiction before subject-matter jurisdiction in a case, like this one, that involved removal. Several companies had sued Ruhrgas in Texas state court. *See id.* at 579. Ruhrgas removed the dispute, asserting various grounds of federal jurisdiction. It then moved for dismissal based on lack of personal jurisdiction, while the plaintiffs filed a motion to remand back to the state court, arguing lack of subject-matter jurisdiction. *See id.* at 579–80. The district court dismissed the case for lack of personal jurisdiction without addressing subject-matter jurisdiction. *See id.* at 580.

To fully appreciate the Supreme Court's ruling, it is helpful to review the thoughtful Fifth Circuit opinion that reversed the district court and was then itself reversed in turn. Sitting *en banc* on appeal, a closely divided Fifth Circuit held that, "at

least in removed cases, district courts should decide issues of subject-matter jurisdiction first," reaching personal jurisdiction "only if subject-matter jurisdiction is found to exist." *Marathon Oil Co. v. A.G. Ruhrgas*, 145 F.3d 211, 214 (5th Cir. 1998). This holding was founded on the court's perception of fundamental differences in theory and effect between personal jurisdiction and subject-matter jurisdiction. First, "[w]hen a federal court acts outside its statutory subject-matter jurisdiction, it violates the fundamental constitutional precept of limited federal powers." *Id.* at 216 (internal quotation marks omitted). Personal jurisdiction, in contrast, "flows not from [Article] III, but from the Due Process Clause," and represents "a restriction on the judicial power not as a matter of sovereignty, but as a matter of individual liberty," so, unlike the defense of lack of subject-matter jurisdiction, the defense of lack of personal jurisdiction can be waived or even estopped. *Id.* at 217 (internal quotation marks omitted). The second distinction was related to federalism concerns that can arise when a case has been removed from state court if the federal court dismisses for lack of personal jurisdiction:

> [I]n the removal context, when a federal district court that lacks federal subject-matter jurisdiction dismisses instead for want of personal jurisdiction, it impermissibly wrests that decision from the state courts. This follows from the fact that because, after remand, such a case would have to remain within the state courts, questions of personal jurisdiction necessarily would fall within the state courts' exclusive, residual jurisdiction. Those courts are entitled to their own, independent—and absent a controlling Supreme Court decision—even conflicting interpretation of their state's long-arm statute and of the minimum contacts requirements of the federal Due Process Clause.

*Id.* at 218. But, said the court, those concerns do not arise when the federal court dismisses for lack of subject-matter jurisdiction:

10

A federal court's decision that it lacks subject-matter jurisdiction, by contrast, returns the case to the state court so that it can adjudicate or dismiss. That decision does not intrude on the power reserved to the states, under the Constitution, to provide for the determination of controversies in their courts.

*Id.* at 219 (citation, brackets, and internal quotation marks omitted).

The Supreme Court disagreed. It recognized that "[t]he character of the two jurisdictional bedrocks unquestionably differs," but, it said, "[t]hese distinctions do not mean that subject-matter jurisdiction is ever and always the more 'fundamental.'" *Ruhrgas*, 526 U.S. at 583–84. Indeed, a challenge to personal jurisdiction may rely "on the *constitutional* safeguard of due process," whereas "the impediment to subject-matter jurisdiction . . . [may] rest[] on *statutory* interpretation, not constitutional command." *Id.* at 584 (emphasis added). Nor do federalism concerns result only from personal-jurisdiction dismissals. Although the Court agreed that "[i]f a federal court dismisses a removed case for want of personal jurisdiction, that determination may preclude the parties from relitigating the very same personal jurisdiction issue in state court," it observed that "[i]ssue preclusion in subsequent state-court litigation . . . may also attend a federal court's subject-matter determination." *Id.* at 585. The Court concluded that while "[a] State's dignitary interest bears consideration when a district court exercises discretion in a case of this order," in some cases "concerns of judicial economy and restraint are overriding" and make it proper to address personal jurisdiction first. *Id.* at 586. "The federal design allows leeway for sensitive judgments of this sort." *Id.* at 587.

Thus, in this case the district court had properly exercised its sound discretion in ruling initially (before the appeal to this court) that it could address personal jurisdiction

11

over CHSI before resolving subject-matter jurisdiction. Even when there is a question of subject-matter jurisdiction lurking in the case that may well have to be resolved with respect to other parties, a straightforward determination that the court lacks personal jurisdiction over a party may be appropriate. After all, the party over which there is no personal jurisdiction should not have to participate at all in the litigation in that forum. A court sensitive to that concern is not abusing its discretion when it decides to relieve the improper party of the burden of participation for what may be a lengthy period (here, more than two years) before resolution of subject-matter jurisdiction. When the district court vacated its earlier personal-jurisdiction ruling, it incorrectly based that ruling on an assumed mandatory jurisdictional hierarchy. One can ask why a court without personal jurisdiction can dismiss for lack of subject-matter jurisdiction but a court without subject-matter jurisdiction cannot dismiss for lack of personal jurisdiction.

To be sure, ordinarily a district court may revise a ruling disposing of one claim at any time before entering final judgment on all claims. *See* Fed. R. Civ. P. 54(b). A district court that has dismissed one of several parties for lack of personal jurisdiction may revisit its ruling after determining that it also lacked subject-matter jurisdiction and then decide to vacate the personal-jurisdiction ruling. But we need not discuss the various considerations that might recommend one course or the other because that option was not available to the district court in this case. This brings us to the second error in vacating the personal-jurisdiction dismissal.

That error was to assume that our remand after the first appeal permitted the district court to reconsider its earlier personal-jurisdiction dismissal. Our mandate did

12

not convey that authority. To begin with, although the Estate's appeal in this court originally included a challenge to the personal-jurisdiction dismissal, the Estate later stipulated to dismissal with prejudice of its appeal with respect to CHSI, and this court entered an order of dismissal. That ended the matter. When we issued our order and judgment in the appeal, we did not include CHSI in the caption and we did not authorize the district court to take any further action regarding CHSI. Our original opinion vacated the district court's rulings "on the supplemental claims . . . with instructions to the district court to remand to New Mexico state court," First 2016 Order at 13, but the only "supplemental claims" before us at that time were the claims against Mountain View. Indeed, the Estate's opening brief on appeal (filed two days before the parties filed their stipulated dismissal of the appeal on the CHSI claims) had urged only "remand [of] the case against Mountain View to New Mexico state district court" if we affirmed the dismissal of the claims against the United States for lack of subject-matter jurisdiction." Aplt.'s Opening Br. at 27, *Estate of Cummings I* (10th Cir. July 15, 2015). Finally, to eliminate any vestige of ambiguity we revised the dispositional paragraph of our opinion at the urging of Mountain View, which expressly requested clarification that the district court was not to remand the claims against CHSI, so that we now vacated only the "rulings on the supplemental claims against Mountain View." *Estate of Cummings I*, 651 F. App'x at 828.

A lower court is "bound to carry the mandate of the upper court into execution and [cannot] consider the questions which the mandate laid at rest." *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 168 (1939); *accord Ins. Grp. Comm. v. Denver & Rio Grande W.*

13

*R.R. Co.*, 329 U.S. 607, 612 (1947) ("When matters are decided by an appellate court, its rulings, unless reversed by it or a superior court, bind the lower court."); Bryan A. Garner et al., *The Law of Judicial Precedent* § 55 at 459 (2016) (*Law of Judicial Precedent*) ("When a case has been heard and determined by an appellate court, the legal rules and principles laid down as applicable to it bind the trial court in all further proceedings in the same lawsuit. They cannot be reviewed, ignored, or departed from."). Failing to raise an issue on appeal, or abandoning an issue that was initially raised, has the same consequences for that litigation as an adverse appellate ruling on that issue. Thus, the mandate rule applies not only to issues on which the higher court has ruled but also "forecloses litigation of issues decided by the district court but [forgone] on appeal or otherwise waived." *Doe v. Chao*, 511 F.3d 461, 466 (4th Cir. 2007) (internal quotation marks omitted); *see United States v. Husband*, 312 F.3d 247, 250 (7th Cir. 2002) ("[A]ny issue that could have been but was not raised on appeal is waived and thus not remanded."); *id.* at 251 ("Parties cannot use the accident of remand as an opportunity to reopen waived issues." (brackets and internal quotation marks omitted)).

We review de novo whether a district court complied with our mandate. *See Vehicle Mkt. Research, Inc. v. Mitchell Int'l, Inc.*, 839 F.3d 1251, 1256 (10th Cir. 2016). We examine whether the issue is foreclosed "either explicitly or by necessary implication." *Guidry v. Sheet Metal Workers Int'l Ass'n, Local No. 9*, 10 F.3d 700, 705 (10th Cir. 1993), *abrogated in part on other grounds on reh'g*, 39 F.3d 1078 (10th Cir. 1994) (en banc).

Our analysis can be brief. The Estate explicitly abandoned "with prejudice" its

14

challenge on appeal to the personal-jurisdiction dismissal of CHSI. And nothing in our opinion resolving the appeal gave the district court leeway to do anything but execute the ministerial duty of vacating its rulings on the supplemental claims against Mountain View and remanding them to state court. Indeed, making this crystal clear was the very purpose of our revision to our dispositional language specifying that only the claims against Mountain View were to be remanded. Our mandate barred any further action with respect to the claims against CHSI. Even if we erred in that regard, district courts are not authorized to correct our errors.

We conclude that it was improper to vacate the dismissal of CHSI and to remand the claims against CHSI to the state court. We now explain why we have jurisdiction to reverse those rulings.

### B. Jurisdiction to Review the District Court's Decision

The Estate contends that even if the remand of the claims against CHSI to state court was improper, this court lacks jurisdiction to review the remand. To resolve this issue, we consider two subsections of 28 U.S.C. § 1447 and cases construing them. The pertinent language of § 1447(c) is:

> A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time *before final judgment* it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.

28 U.S.C. § 1447(c) (emphasis added). And the language of subsection (d) is: "An order remanding a case to the State court from which it was removed is not reviewable on appeal or otherwise, except [when the case was removed under one of two statutes not

15

applicable here].” *Id.* § 1447(d).

The language of § 1447(d) appears to be categorical, forbidding any review of the remand order in this case. The Supreme Court, however, has limited the restriction in § 1447(d) to only those remands that are colorably authorized by § 1447(c), and the district court's remand in this case does not satisfy that requirement because it was ordered after final judgment.

The leading case is *Thermtron Products, Inc. v. Hermansdorfer*, 423 U.S. 336 (1976).[2] After two Kentucky residents sued an Indiana corporation and an Indiana resident in Kentucky state court, the defendants removed the case to federal district court. *See id.* at 337–38. Stating that its docket was jammed for the foreseeable future and that state-court resolution would likely be faster, the district court ordered the defendants to explain why remand would be inappropriate. *See id.* at 339. Unsatisfied with the response, the district court remanded the case. *See id.* at 341. The defendants petitioned the Sixth Circuit for a writ of mandamus, but that court denied the petition, citing § 1447(d). *See id.* at 341–42.

The Supreme Court reversed. *See id.* at 342. The Court stated that § 1447(d) “is not dispositive of the reviewability of remand orders in and of itself”; rather, it “must be construed together” with § 1447(c). *Id.* at 345. Doing so, the Court concluded that “only remand orders issued under § 1447(c) and invoking the grounds specified therein . . . are

---

[2] Although the language of § 1447 has been tweaked over the years, the Supreme Court thus far has assumed that the changes in the language do not affect the analysis and conclusions in *Thermtron* or the Supreme Court cases following it. *See Powerex Corp. v. Reliant Energy Servs., Inc.*, 551 U.S. 224, 229–30 (2007); *see also Carlsbad Tech., Inc., v. HIF Bio, Inc.*, 556 U.S. 635, 638 (2009).

16

immune from review under § 1447(d)." *Id.* at 346.  Although § 1447(d) "prohibits review of all remand orders issued pursuant to § 1447(c) whether erroneous or not," *id*. at 343, the district court's remand ground—docket burdens—was not a § 1447(c) ground and hence the remand was reviewable.  *See id.* at 343–44.

The Court recognized that the purpose of § 1447(d) was to "prevent delay in the trial of remanded cases by protracted litigation of jurisdictional issues." *Id.* at 351.  But this purpose, it said, should not bar review when a district judge has "remanded a properly removed case on grounds that he had no authority to consider." *Id.*  The Court was concerned that without this limitation on the denial of reviewability, the district courts could be, as in that case, utterly lawless.  The Court was "not convinced that Congress ever intended to extend carte blanche authority to the district courts to revise the federal statutes governing removal by remanding cases on grounds that seem justifiable to them but which are not recognized by the controlling statute." *Id.* at 350.  And it noted that the Court had "not yet construed the present or past prohibition against review of remand orders so as to extinguish the power of an appellate court to correct a district court that has not merely erred in applying the requisite provision for remand but has remanded a case on grounds not specified in the statute and not touching the propriety of the removal." *Id.* at 352.

Following *Thermtron*, the Supreme Court has not permitted review by appellate courts of remand orders colorably authorized by § 1447(c)—namely, remands for lack of jurisdiction, *see Powerex Corp.*, 551 U.S. at 234 (ground of remand was "colorably characterized as subject-matter jurisdiction"), or for defects in removal procedure, *see*

17

*Things Remembered, Inc. v. Petrarca*, 516 U.S. 124, 128 (1995) (remanded because removal was untimely). But appellate courts can review remands based on other grounds, such as the district court's discretionary decision to decline to exercise supplemental jurisdiction over state-law claims, *see Carlsbad Tech., Inc.*, 556 U.S. at 638–41, or its decision to abstain under *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943), *see Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 710–11 (1996). Recently, we followed this line of cases in holding that we could review a district court's remand based on its determination that the removing party had waived its right to removal. *See City of Albuquerque v. Soto Enters., Inc.*, 864 F.3d 1089, 1091–98 (10th Cir. 2017).

In our view, *Thermtron* and its successors authorize review of the remand order in this case. Section 1447(c) authorizes remand for lack of subject-matter jurisdiction only "at any time before final judgment." The district court in this case issued its remand order after final judgment. The order was therefore on its face not a remand under § 1447(c) and is reviewable.

The Fifth Circuit addressed this issue in *In re Carter*, 618 F.2d 1093, 1097–100 (5th Cir. 1980). In that case a Georgia resident sued an international union and its local affiliate in state court, claiming that union representatives had conspired to deprive him of employment and to impugn his reputation. *See id.* at 1096–97. The local answered, but the international did not, eventually leading to a default judgment against the international. *See id.* at 1097. The plaintiff dismissed the local so that the state-court trial considered only damages against the international, which the jury awarded. *See id.* The international appealed, claiming it had never been properly served, and the Georgia

18

Supreme Court agreed and reversed. When the plaintiff later effected proper service on the international, the international removed the case to federal court, asserting federal-question jurisdiction. *See id.* The plaintiff's complaint itself did not explicitly assert any federal cause of action, and he indicated to the district court that he was pursuing only state-law causes of action; but the case was not remanded to state court. *See id.* After a jury trial led to a verdict for plaintiff and the district court entered a final judgment, the international moved to vacate the judgment, claiming the district court lacked subject-matter jurisdiction. *See id.* Agreeing that it lacked jurisdiction, the district court vacated the judgment and remanded the case to Georgia state court. *See id.* The plaintiff then petitioned the Fifth Circuit for a writ of mandamus to review the remand order. *See id.*

The Fifth Circuit determined that notwithstanding § 1447(d), it could review the order. *See id.* at 1098–100. Because the order issued not *before* final judgment, but *after* it, the Fifth Circuit concluded that the remand order was not a remand under § 1447(c). *See id.* at 1099–100; *see also id.* at 1098 n.3 (observing that previous versions of the statute allowed remands "at any time"). And given *Thermtron*'s linkage of § 1447(c) and § 1447(d), § 1447(d) did not apply. The court persuasively analyzed the policy supporting this exception to § 1447(d) for remand orders entered after a final judgment, saying that the "considerations of prompt and efficient judicial resolution of substantive controversies that inform a rule of nonreviewability of remand orders issued before final judgment in a removed case do not apply with the same force to remand orders issued subsequent to entry of final judgment in a removed case." *Id.* at 1099. It stated:

> Whereas before final judgment the nonreviewability of remand orders

19

serves to ensure the expeditious resolution of the case in a court of competent jurisdiction—the court in which the action was originally filed—and to minimize the expenditure of scarce federal judicial resources at the appellate level, once a case has been fully tried in a federal court and a final judgment entered, the equation alters markedly.

*Id.* Improper remand after judgment, it said, can result in significant waste:

Federal judicial resources, once expended upon the trial of a cause, obviously cannot be recouped by relitigation in a state court. An order of remand after entry of final judgment no longer fosters prompt resolution of the merits of the case, but serves instead only to delay final resolution by subjecting the litigants to a second, and the state court to a possibly duplicative, trial of the same matter.

*Id.* Therefore, "[e]xtending the prohibition of review in [§ 1447(d)] to a remand order entered outside the time frame specified in [§ 1447(c)] . . . promotes not at all the congressional policy that is the foundation of [§ 1447(d)] and can only compound unnecessarily the undesirable consequences that ineluctably accompany any rule which makes a possible judicial error unreviewable." *Id.* The court observed that a remand after final judgment by a district court "is more closely akin to a remand of a removed case ordered by an appellate court than it is to a remand by the trial court before a final judgment has been rendered." *Id.* at 1100. And it pointed out that "[r]emands ordered by appellate courts returning removed cases to state courts have never been presumed to come within the bar of § 1447(d) or its predecessors." *Id.* (citing *Willingham v. Morgan*, 395 U.S. 402, 404 (1969); *Aetna Cas. & Sur. Co. v. Flowers*, 330 U.S. 464, 467 (1947); and *Gay v. Ruff*, 292 U.S. 25, 30 (1934)).

We agree with this reasoning and hold that the § 1447(d) reviewability bar does not apply to remand orders entered by a district court after final judgment.

20

There remains only the question whether the district court's order remanding the claims against CHSI was "before final judgment." 28 U.S.C. § 1447(c). We are not aware of any precedent that defines the term *final judgment* in § 1447(c). The context in which courts most frequently address the meaning of finality is when an appellate court is addressing whether a district-court decision is appealable under the final-judgment rule of 28 U.S.C. § 1291, which limits appeals to "final decisions." In that context, a decision is final if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Catlin v. United States*, 324 U.S. 229, 233 (1945). We recently said that a decision was final when it left "only a ministerial task." *Tennille v. W. Union Co.*, 774 F.3d 1249, 1253 (10th Cir. 2014). Similarly, in determining whether a state-court decision was a final judgment reviewable by the Supreme Court, the Court has said that "if nothing more than a ministerial act remains to be done, such as the entry of a judgment upon a mandate, the decree is regarded as concluding the case and is immediately reviewable." *Republic Natural Gas Co. v. Oklahoma*, 334 U.S. 62, 68 (1948).

But a formal definition of finality that can mechanically be applied in all circumstances is unattainable. The purpose being served by the term must always be considered. As the Supreme Court has repeatedly noted in the context of § 1291, "finality is to be given a practical rather than a technical construction." *Microsoft Corp. v. Baker*, 137 S. Ct. 1702, 1712 (2017) (internal quotation marks omitted).

In the context of district-court action after an appeal, sometimes it is straightforward whether a decision comes after a final judgment. In this litigation, the

21

first appeal—which was brought by the Estate—was from a final judgment of the district court. If we had affirmed that judgment in full, there would be no reason to treat the case after remand as having a different status for purposes of § 1447(c) than if there had been no appeal. There could be no debate that a later order by the district court vacating its dismissal of CHSI and remanding the claims against CHSI to state court would have been after final judgment. On the other hand, if we had reversed and remanded with directions to the district court to conduct further proceedings—such as an evidentiary hearing to determine whether the physician defendants were actually working for the Public Health Service or whether the Estate had submitted a timely notice of claim—then a judgment entered by the district court after conducting such proceedings would be a new final judgment.

What did happen, however, was we affirmed the district court in part and reversed and remanded with instructions to that court to perform what can only be characterized as ministerial tasks, requiring the exercise of no discretion by the district court whatsoever. The judgment of this court instructing the district court precisely what to do is about as final as it gets. In terms of the role of the district court after remand, it had as little independent responsibility as if we had affirmed in full. Any further action by the district court beyond executing the ministerial tasks required by our mandate would be as much *after* final judgment as action taken by the district court after its original final judgment had it not been appealed.[3]

---

[3] The Estate argues that the district court's order remanding the claims against CHSI to state court satisfied § 1447(c) because that remand *was* the final judgment. But § 1447(c)

22

The same pragmatic reasons described by the Fifth Circuit in *Carter* as supporting review of district-court remand decisions made after the district court has disposed of a case in a final judgment also support our review in this case. Appellate review can avoid wasteful, duplicative litigation in state court. And there is another reason, one fundamental to the hierarchical nature of the courts, for treating this court's judgment on the first appeal—which left nothing further to the discretion of the district court—as the "final judgment" after which a district-court remand order would be reviewable. It is essential that district courts comply with our mandates. "For appellate review to be meaningful, the decisions of the appellate court must bind the lower court on remand. Even if the appellate court may be incorrect, finality and the structure of the system require adherence to its decisions." *Law of Judicial Precedent* § 55 at 459; *see also* 18B Charles Alan Wright et al., *Federal Practice and Procedure* § 4478.3 at 733 (2d ed. 2002) ("[A]n inferior tribunal is bound to honor the mandate of a superior court within a single judicial system. There is nothing surprising about the basic principle, which inheres in the nature of judicial hierarchy . . . ."). If the need for finality justifies the restriction in § 1447(c) on remands after district-court entry of final judgment in the first instance, that need is magnified when a federal appellate court has fully and finally disposed of federal consideration of the litigation.[4]

### III.    CONCLUSION

authorizes removal only *"before* final judgment." And the Estate's argument proves too much. If a remand order issued after what would otherwise be a final judgment would satisfy § 1447(c), then a remand order would *never* run afoul of the "before" requirement.

[4]  In light of our disposition, there is no need for us to address CHSI's contention that the district court's January 2017 order and judgment violated CHSI's due-process rights.

23

The Estate's motion to dismiss the appeal is **DENIED** and the district court's January 2017 order and judgment vacating the dismissal of the claims against CHSI and remanding those claims to state court is **REVERSED**.  We **REMAND** this case to the district court solely for the purpose of ruling on CHSI's request for injunctive relief with respect to the pending state proceedings.  We **DENY** as moot CHSI's motion for expedited consideration.